**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

---

W.J. O'NEIL COMPANY,

        Plaintiff,

v.                                                    Case No. 11-12020

SHEPLEY, BULFINCH, RICHARDSON &
ABBOTT, INC., and SMITH SECKMAN REID,
INC.,

        Defendants.

and

SHEPLEY, BULFINCH, RICHARDSON &
ABBOTT, INC.,

        Cross-Claimant,

v.

SMITH SECKMAN REID, INC.,

        Cross-Defendant.

_____/

**OPINION AND ORDER GRANTING DEFENDANTS' JOINT MOTION FOR SUMMARY**
**JUDGMENT AND/OR DISMISSAL**

Before the court is a motion for summary judgment and/or dismissal filed jointly

by Defendants Shepley, Bulfinch, Richardson & Abbott, Inc. ("SBRA"), and Smith

Seckman Reid, Inc. ("SSR").   Plaintiff W.J. O'Neil Company ("O'Neil") opposes the

motion.  The court considered the filings, and conducted a hearing on the matter on

December 14, 2011.  In the months following the hearing, counsel provided the court

with several "letter briefs"—and reactions thereto—offering to supplement the original

briefing, *e.g.*, by bringing other cases to the court's attention.[1]  For the reasons stated below, the motion will be granted.

## I.  BACKGROUND

### A.  Factual Summary

This lawsuit arises out of damages which O'Neil alleges it sustained in connection with its work on the construction of the Cardiovascular Center ("CVC") hospital at the University of Michigan ("UofM") in Ann Arbor, Michigan (the "Project"). UofM retained Defendant SBRA as the project architect, and SBRA retained SSR to provide design services related to the mechanical, electrical, plumbing, and fire protection systems associated with the CVC Project.  UofM entered into a contract with Barton Malow Company ("Barton Malow") to serve as the construction manager, and Barton Malow entered into a subcontract with O'Neil to serve as the mechanical contractor.

The Prime Contract between Barton Malow and UofM provided that Barton Malow could pass through claims against it arising out of delays by the design professional.  (Defs.' Ex. 2, Ex. B ¶¶ A1.1.31 and G4.1.1.1.)  The subcontract between Barton Malow and O'Neil contained a dispute resolution process, which was, in fact,

---

[1] The court regrets the court's inadvertent and unusual delay in deciding this motion, but suggests that in the future counsel consider inquiring of the court when a case has been fully presented but seems to have languished. See Judge Cleland's standard form Scheduling Order ¶ 7(h) ("If a motion has been pending in chambers without resolution for an apparently inordinate time, counsel are asked to notify the court's case manager . . . ."). *See* http://www.mied.uscourts.gov/Judges/guidelines/topic.cfm?topic_id=66

Counsel might also note that supplemental briefs and letters addressed to the court are not ordinarily entertained with specific guidance or advance approval of the judge.

eventually implemented by the parties.  The subcontract also incorporated a "flow-through" provision which incorporates the provisions of the Prime Contract into the subcontract.  (Defs. Ex. 4, Art. 2.1.6.)   UofM's contract with SBRA (Defs. Ex. 1, ¶ 11.1), and SBRA's contract with SSR (Defs. Ex. ¶¶ 3.1, 3.8, 3.9) contained similar dispute resolution and indemnity provisions.

O'Neil brings the instant lawsuit in tort claiming that the damages it sustained in connection with its work on the CVC Project resulted from design errors allegedly caused by SBRA and SSR.

### B.  Procedural History

The procedural background of this case is complex but essential to understand in determining Defendants' res judicata argument.

### 1.  Washtenaw County Circuit Court Litigation

O'Neil filed suit against Barlow Marton and SBRA in Washtenaw County Circuit Court on October 12, 2006.  (Defs. Ex. 6.)  SSR was later made a party to the Washtenaw County litigation, by both SBRA and O'Neil.  (Pl's Resp. 9.)  Barlow Marton brought a motion to dismiss in favor of arbitration pursuant to the contract between Barlow Marton and O'Neil, which the circuit court granted.  Specifically, the court dismissed Barlow Marton in favor of arbitration before the American Arbitration Association ("AAA"), but stayed the claims against SBRA and SSR.  While the state court had originally directed the parties file status updates every six months, on April 22, 2009, the state court dismissed the claims against SBRA and SSR without prejudice and ruled that the statute of limitations was tolled during the pendency of the Washtenaw County litigation.

3

### 2.  O'Neil/Barton Malow Arbitration

O'Neil filed a demand for arbitration against Barton Malow on February 15, 2007, alleging breach and abandonment of contract.

### 3.  The University/Barton Malow Arbitration

On March 30, 2007, Barton Malow filed a demand for arbitration against the University seeking indemnity from the University for the alleged design errors by the design team.  (Defs. Ex. 9.)

### 4.  Consolidated Arbitration

On June 12, 2007, the University moved for consolidation of the two arbitrations, which O'Neil's opposed. The two arbitrations were, however, consolidated in early 2008. UofM then filed its demand for indemnification against SBRA, and SBRA filed its demand for indemnification against SSR.

The arbitration proceeded through substantial discovery,[2] and a hearing, begun in December, 2009, concluded on August 27, 2010.  It is undisputed that O'Neil did not pursue claims against SBRA or SSR, but instead asserted a breach of contract claim against Barton Malow.  One element of the breach of contract claim was the implied warranty of accuracy and adequacy of the plans and specifications.  (Pl.'s Resp. 11.)

O'Neil sought damages in an amount of $19 million.  Ultimately, the arbitrators issued an Interim Award in favor of O'Neil in the amount of $2,432,184.20 plus interest. The panel found that O'Neil was entitled to damages arising out of the change in

---

[2] According to Defendants, they exchanged nearly one million pages of documents, and took over fifty discovery depositions.  (Defs.' Br. 10.)

4

schedule, but was not entitled to claims for consequential damages and alleged lost
profits.  (Defs. Ex. 26.)

The arbitrators also found that Barton Malow had failed to establish its claims
against UofM and that, therefore, the indemnity claims flowing through UofM to SBRA
and SSR were also denied.  This Interim Award decision was based largely on the
multiple change orders to which Barton Malow agreed and thereby released further
claims.

## 5.  The Federal Litigation

On May 9, 2011, O'Neil initiated the instant litigation against SBRA and SSR,
asserting tort claims for professional negligence, tortious interference, and innocent
misrepresentation related to the UofM project.

## II.  STANDARD[3]

### A.  Rule 12(c)

When ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure
12(b)(6), the court must construe the complaint in a light most favorable to the plaintiff
and accept all the factual allegations as true.  *Tackett v. M & G Polymers, USA, LLC*,
561 F.3d 478, 488 (6th Cir. 2009) (per curiam) (citing *Gunasekera v. Irwin*, 551 F.3d
461, 466 (6th Cir. 2009)).  In doing so, the court must "draw all reasonable inferences in
favor of the plaintiff."  *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).  Yet,

---

[3]Defendants bring their motion under Rule 12(c) and Rule 56.  While the parties
rely on matters outside the pleadings, the matters primarily involve matters of public
record.  Moreover, although O'Neil states generally that if the court relies on Rule 56, it
should be allowed an opportunity for discovery, it does not specifically identify why such
discovery is necessary.  *See generally* Fed. R. Civ. P. 56(d).  In any event, the court's
resolution of this motion turns entirely on the procedural history of the previous
arbitrations, and thus the result is the same whether analyzed under Rule 12 or Rule 56.

the court "'need not accept as true legal conclusions or unwarranted factual inferences.'" *Id.* (quoting *Gregory v. Shelby Cnty.*, 220 F.3d 433, 466 (6th Cir. 2000)). Although a heightened fact pleading of specifics is not required, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Though decidedly generous, this standard of review requires more than the bare assertion of legal conclusions.

> [A] plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the complaint's allegations are true (even if doubtful in fact).

*Twombly*, 550 U.S. at 555-56 (citations omitted). Further, the complaint must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957), *abrogated on other grounds by Twombly*, 550 U.S. 544. A "complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007). Therefore, "to survive a motion to dismiss, the plaintiff must allege facts that, if accepted as true, are sufficient to raise a right to relief above the speculative level, and to state a claim to relief that is plausible on its face." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (citations and internal quotation marks omitted). Despite these

6

requirements, a court cannot grant a motion to dismiss under Rule 12(b)(6) based upon its disbelief of a complaint's well-pled factual allegations. *Twombly*, 550 U.S. at 555-56.

"'In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account.'" *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001) (emphasis removed) (quoting *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997)).

In resolving a motion for judgment on the pleadings pursuant to Rule 12(c), "'all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment.'" *Johnson v. Bredesen*, 624 F.3d 742, 746 (6th Cir. 2010) (quoting *Tucker v. Middleburg-Legacy Place, LLC*, 539 F.3d 545, 549 (6th Cir. 2008)).

## B. Rule 56

Under Federal Rule of Civil Procedure 56, summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When deciding a motion for summary judgment, the court "is not to 'weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "The central issue is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Id.* at 497 (quoting

7

*Anderson*, 477 U.S. at 251-52).  "The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the [movant] is entitled to a verdict . . . ."  *Anderson*, 477 U.S. at 252.

The party seeking summary judgment has the initial burden of showing the absence of a genuine dispute as to a material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then shifts to the nonmovant, who "must set forth specific facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 256.  It is not enough for the nonmovant to "simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Rather, the nonmovant must sufficiently allege a fact that, if proven, "would have [the] effect of establishing or refuting one of essential elements of a cause of action or defense asserted by the parties."  *Midwest Media Prop. L.L.C. v. Symmes Twp., Ohio*, 503 F.3d 456, 469 (6th Cir. 2007) (alteration in original) (quoting *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984)) (internal quotation marks omitted).

Both parties must support their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1)(A).  Alternatively, either party may carry its burden by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  *Id.* 56(c)(1)(B).  "The court must view the evidence in the

8

light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Sagan*, 342 F.3d at 497 (citing *Matsushita*, 475 U.S. at 587).

### III. DISCUSSION

Defendants present four arguments why Plaintiff's complaint should be dismissed or why they should be granted summary judgment. First, Defendants argue that Plaintiff's claims are barred by *res judicata*, because of the previous arbitration proceedings. Second, and relatedly, they argue that Plaintiff's claims are precluded by collateral estoppel. Third, Defendants contend that Plaintiff's claims are barred by the economic loss doctrine. Fourth, and finally, Defendants assert that Plaintiff's claims fail on the merits. Because the court concludes that this action is barred by the first of these, it need not, and will not, reach Defendants' second, third, or fourth alternative arguments.

Under Michigan law, "[r]es judicata bars a subsequent action between the same parties when the evidence or essential facts are identical." *Dart v. Dart,* 597 N.W.2d 82, 88 (Mich. 1999) (citing *Eaton Co. Bd. of Co. Rd. Comm'rs v. Schultz,* 521 N.W.2d 847 (Mich. Ct. App. 1994)). Under the doctrine of res judicata, the subsequent action is barred when (1) the first action was decided on the merits, (2) the matter contested in the second action was or could have been resolved in the first, and (3) both actions involve the same parties or their privies. *Id.* (citation omitted). In applying this test, "Michigan courts have broadly applied the doctrine of res judicata. They have barred, not only claims already litigated, but every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not." *Id.* (citing *Gose v. Monroe Auto Equip. Co.,* 294 N.W.2d 165 (Mich. 1980); *Sprague v. Buhagiar,*

9

539 N.W.2d 587 (Mich. Ct. App. 1995)).  After assessing each of these three

requirements, the court concludes that this litigation is indeed barred.

## A.  First Action Decided on the Merits

First, the consolidated arbitration involving O'Neil, Barton Malow, UofM, SBRA ,

and SSR resulted in a decision on the merits.  Michigan courts have long held that final

opinions by arbitrators are entitled to the same accord as judgments for purposes of res

judicata.  *Lumbermen's Mut. Cas. Co. v. Bissell,* 190 N.W. 283, 284 (Mich. 1922) ("But

awards of arbitrators and decisions of administrative boards have a finality, and are not

open to collateral attack.").  Thus, the fact that the prior proceeding was an arbitration

rather than a court proceeding has no impact on the court's res judicata analysis.

O'Neil argues that the prior proceeding did not result in a decision on the merits

of the tort claims between it and Defendants because O'Neil did not assert any claims

against Defendants in the prior action.  However, the Michigan Supreme Court has

repeatedly held that

> the doctrine of res judicata applies, except in special cases, in a
> subsequent action between the same parties and not only to points upon
> which the court was actually required by the parties to form an opinion and
> pronounce a judgment, but to every point which properly belonged to the
> subject of litigation, and which the parties, exercising reasonable diligence,
> might have brought forward at the time.

 *Pierson Sand and Gravel, Inc. v. Keeler Brass Co.*, 596 N.W.2d 153, 157 (Mich. 1999)

(citations omitted).  Further, "[a]s a general rule, res judicata will apply to bar a

subsequent relitigation based upon the same transaction or events, regardless of

whether a subsequent litigation is pursued in a federal or state forum."  *Id.*  Indeed,

Michigan has a clear policy against claim splitting.  *See Schwartz v. City of Flint*, 466

10

N.W.2d 357, 359 (Mich. Ct. App. 1991) ("The doctrine of res judicata is a manifestation

of the recognition that interminable litigation leads to vexation, confusion, and chaos for

the litigants, resulting in the inefficient use of judicial time.") (citing *Rogers v. Colonial*

*Federal Savings & Loan Ass'n of Grosse Pointe Woods,* 275 N.W.2d 499 (Mich. 1979);

*Sherrell v. Bugaski,* 425 N.W.2d 707 (Mich. Ct. App. 1988)).  That O'Neil did not bring

these exact claims, or any claims, against Defendants in the prior proceeding is not

determinative.  It is enough, for purposes of this first requirement, that the prior

arbitration, involving the same underlying facts, resulted in a final decision on the merits,

and it did.

### B.  The Matter Contested in the Second Case
### Could Have Been Resolved in the First

Defendants next assert, and O'Neil denies, that the claims asserted in this action

could have been brought in the arbitration.  O'Neil argues, correctly, that there is no

arbitration agreement between it and Defendants and that therefore it could not have

been compelled to arbitrate the instant claims.  It is true that "Arbitration is a matter of

contract and a party cannot be required to submit to arbitration any dispute which he

has not agreed so to submit." *Arrow Overall Supply Co. v. Peloquin Enterprises,* 323

N.W.2d 1, 2 (Mich.1982) (quoting *J. Brodie & Son, Inc. v. George A. Fuller Co.,* 167

N.W.2d 886 (Mich Ct. App. 1969).  It is also true that it generally "follows that a valid

agreement must exist for arbitration to be binding."  *Id.*

However, O'Neil's argument misses the point.  The issue here is not whether

O'Neil was contractually *required* to bring the claims in the previous action, but whether

once a participant (even an unwilling participant) in the consolidated arbitration, O'Neil

*could* have brought these claims in the prior arbitration.  There can be no reasonable argument that these claims could not have been properly asserted in the arbitration proceeding, as all the same parties were involved in the consolidated arbitration, and as it involved identical underlying facts.

As stated above, Michigan "has taken a broad approach to the doctrine of res judicata, holding that it bars not only claims already litigated, but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not."  *Adair v. Michigan*, 680 N.W.2d 386, 398 (Mich. 2004) (citing *Dart v. Dart*, 597 N.W.2d 82 (Mich. 1999)).  In doing so, it applies the generous "same transaction" test to analyze whether claims could have been brought in the prior proceeding.  *Id.* at 398.  The Michigan Supreme Court describes the "same transaction" test as follows:  "Whether a factual grouping constitutes a transaction for purposes of res judicata is to be determined pragmatically, by considering whether the facts are related in *time, space, origin or motivation*, [and] whether they form a convenient trial unit . . . ."  *Id.* (quoting 46 Am. Jur. 2d, Judgments 533, p. 801 (emphasis added)). Here, there can be no doubt that the claims asserted in this action involved the same transaction as those asserted in the consolidated arbitration.  All of the claims involve design problems allegedly arising during the CVC Project, and who is to blame for those problems.

In analyzing this issue, the court is cognizant that "[t]he doctrine of res judicata was judicially created in order to 'relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication.'" *Pierson Sand and Gravel, Inc. v. Keeler Brass*

*Co.*, 596 N.W.2d 153, 157 (Mich. 1999) (quoting *Hackley v. Hackley*, 395 N.W.2d 906 (Mich. 1986) (internal quotations omitted)). There is, of course, a general policy against claim splitting for the very reason that parties should attempt to conserve resources and should not be allowed two bites at the same apple. *See Schwartz*, 466 N.W.2d at 359. O'Neil argues repeatedly that it was forced into the consolidated arbitration, but that is of no moment. Once involved in the consolidated arbitration, it is held to a standard, and should have brought all the claims that "exercising reasonable diligence, could have raised" or face the very real possibility—which has now come to fruition—that parties may later invoke the doctrine of res judicata. *Adair*, 680 N.W.2d at 398.

### C. Both Actions Involved the Same Parties

Finally, O'Neil argues that res judicata does not apply because in the consolidated arbitration there were no claims asserted between it and Defendants. Once again, O'Neil's argument misses the mark. Consistent with the broad approach taken to res judicata, Michigan courts do not demand strict identity of parties. *See, e.g., Peterson Novelties, Inc. v. City of Berkley,* 672 N.W.2d 351, 359 (Mich. Ct. App. 2003) ("The parties to the second action need be only substantially identical to the parties in the first action, in that the rule applies to both parties and their privies. . . . [A] privy includes a person so identified in interest with another that he represents the same legal right, such as a principal to an agent, a master to a servant, or an indemnitor to an indemnitee.").

Instead, the test requires that "both actions *involve* the same parties or their privies." *Estes v. Titus*, 751 N.W.2d 493, 499 (Mich. 2008) (emphasis added) (citation omitted). Here, the prior arbitration indeed "involved" the same parties. It does not

13

matter that the alignment of the parties were different, or that O'Neil did not assert a claim directly against Defendants.  There can be no dispute that all the same parties were involved in the prior arbitration and that their interests were adverse in that arbitration.  Defendants in the prior action had identical interests with Barton Malow in defending against O'Neil's contentions that the design was defective and the services provided by the design team inadequate.  The Sixth Circuit has recognized that "[U]nder Michigan law 'a perfect identity of the parties is not required'; rather, the Michigan courts require 'a substantial identity of interests and a working functional relationship in which the interests of the nonparty are presented and protected by the party in the litigation." *McCoy v. Michigan*, 369 F. App'x 646, 650 (6th Cir. 2010) (quoting *Adair v. Michigan*, 470 Mich. 105, 680 N.W.2d 386, 396, 397 (2004)).  This standard is easily met here.

The court accordingly finds that this action is barred as a matter of law by the doctrine of res judicata.  Defendants' motion will be granted and judgment awarded to Defendants.

## IV.  CONCLUSION

For the reasons stated above, IT IS ORDERED that Defendants' joint motion for summary judgment and/or dismissal [Dkt. # 19] is GRANTED.

       S/Robert H. Cleland             
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  September 25, 2012

14

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, September 25, 2012, by electronic and/or ordinary mail.

 S/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522