# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

W.J. O'NEIL CO.,

      Plaintiff,

v.                                                                     Case No. 11-12020

SHEPLEY, BULFINCH, RICHARDSON &
ABBOT, INC., et. al.,

      Defendants.

_____/

## OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

Now before the court are two parallel motions for summary dismissal and/or

judgment, one filed by Defendant Shepley, Bulfinch, Richardson & Abbott, Inc. ("SBRA")

and the other filed by Defendant Smith Seckman Reid, Inc. ("SSR").  (Dkt.

## 54, 59.) Because the court will not rely on any matters outside the pleadings, it will

analyze the motions under the motion to dismiss standard.  The matter was fully briefed,

and the court held a hearing on Wednesday, July 13, 2016.  For the reasons detailed

below, the court will grant Defendants' Motions.

## I. BACKGROUND

### A.  Factual Summary

This lawsuit arises out of damages that W.J. O'Neil Co. ("O'Neil") allegedly

sustained in connection with its work on the construction of the Cardiovascular Center

("CVC") hospital at the University of Michigan ("UofM") in Ann Arbor, Michigan (the

"Project"). UofM retained Defendant SBRA as the project architect, and SBRA retained

SSR to provide design services related to the mechanical, electrical, plumbing, and fire

protection systems associated with the CVC Project.  UofM entered into a contract with Barton Malow Company ("Barton Malow") to serve as the construction manager, and Barton Malow entered into a subcontract with O'Neil to serve as the mechanical contractor.

The Prime Contract between Barton Malow and UofM provided that Barton Malow could pass through claims against it arising out of delays by the design professional.  (Defs.' Ex. 2, Ex. B ¶¶ A1.1.31 and G4.1.1.1.)  The subcontract between Barton Malow and O'Neil contained a dispute resolution process, which was, in fact, eventually implemented by the parties.  The subcontract also incorporated a "flow-through" provision which incorporates the provisions of the Prime Contract into the subcontract.  (Defs. Ex. 4, Art. 2.1.6.)   UofM's contract with SBRA (Defs. Ex. 1, ¶ 11.1), and SBRA's contract with SSR (Defs. Ex. ¶¶ 3.1, 3.8, 3.9) contained similar dispute resolution and indemnity provisions.

O'Neil brings the instant lawsuit in tort claiming that the damages it sustained in connection with its work on the CVC Project resulted from design errors allegedly caused by SBRA and SSR.

### B.  Procedural History

The procedural background of this matter is rather complicated, but is essential to understand in considering Defendants' argument.

### 1.  Washtenaw County Circuit Court Litigation

O'Neil filed suit against Barton Malow and SBRA in Washtenaw County Circuit Court on October 12, 2006.  (Defs. Ex. 6.)  SSR was later made a party to the Washtenaw County litigation, by both SBRA and O'Neil.  (Pl's Resp. 9.)  Pursuant to the

contract between Barton Malow and O'Neil, Barton Malow brought a motion to dismiss in favor of arbitration, which the circuit court granted.  Specifically, the court dismissed in favor of arbitration before the American Arbitration Association ("AAA"), but stayed the claims against SBRA and SSR.  While the state court had originally directed the parties to file status updates every six months, on April 22, 2009, it dismissed the claims against SBRA and SSR without prejudice and ruled that the statute of limitations was tolled during the pendency of the Washtenaw County litigation.

### 2. O'Neil/Barton Malow Arbitration

O'Neil filed a demand for arbitration against Barton Malow on February 15, 2007, alleging breach and abandonment of contract.

### 3. The University/Barton Malow Arbitration

On March 30, 2007, Barton Malow filed a demand for arbitration against the University seeking indemnity from the University for the alleged design errors by the design team.  (Defs. Ex. 9.)

### 4. Consolidated Arbitration

On June 12, 2007, the University moved for consolidation of the two arbitrations. Over O'Neil's opposition, the two arbitrations were consolidated in early 2008.  UofM then filed its demand for indemnification against SBRA, and SBRA filed its demand for indemnification against SSR.

The arbitration proceeded through substantial discovery,[1] and concluded with an arbitration hearing from December, 2009 to August 27, 2010.  It is undisputed that

---

[1] According to Defendants, they exchanged nearly one million pages of documents, and took over fifty discovery depositions.  (Defs.' Br. 10.)

O'Neil did not pursue claims against SBRA or SSR, but instead asserted a breach of contract claim against Barton Malow.  One element of the breach of contract claim was the implied warranty of accuracy and adequacy of the plans and specifications.  (Pl.'s Resp. 11.)

O'Neil sought damages in excess of $19 million.  Ultimately, the arbitrators issued an Interim Award in favor of O'Neil in the amount of $2,432,184.20 plus interest.  The panel found that O'Neil was entitled to damages arising out of the change in schedule, but was not entitled to claims for consequential damages and alleged lost profits.  (Defs. Ex. 26.)

The arbitrators also found that Barton Malow had failed to establish its claims against UofM and that, therefore, the indemnity claims flowing through UofM to SBRA and SSR were also denied.  The Interim Award based this decision largely on the multiple change orders to which Barton Malow agreed and thereby released further claims.

### 5.  The Federal Litigation

On May 9, 2011, O'Neil initiated the instant litigation against SBRA and SSR, asserting tort claims for professional negligence, tortious interference, and innocent misrepresentation related to the UofM project.  On September 25, 2012, the court issued an order granting Defendants' Joint Motion for Summary Judgment and/or Dismissal on res judicata grounds.  O'Neil appealed to the Sixth Circuit, which reversed and remanded for further proceeding.  Defendants then filed the instant Motions.

4

## II.  STANDARD

When ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must construe the complaint in a light most favorable to the plaintiff and accept all the factual allegations as true.  *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (per curiam) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009)).  In doing so, the court must "draw all reasonable inferences in favor of the plaintiff."  *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).  Yet, the court "'need not accept as true legal conclusions or unwarranted factual inferences.'"  *Id.* (quoting *Gregory v. Shelby Cnty.*, 220 F.3d 433, 466 (6th Cir. 2000)).  Although a heightened fact pleading of specifics is not required, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Though decidedly generous, this standard of review requires more than the bare assertion of legal conclusions.

> [A] plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the complaint's allegations are true (even if doubtful in fact).

*Twombly*, 550 U.S. at 555-56 (citations omitted).  Further, the complaint must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."

5

*Conley v. Gibson*, 355 U.S. 41, 47 (1957), *abrogated on other grounds by Twombly*,

550 U.S. 544.  A "complaint must contain either direct or inferential allegations

respecting all material elements to sustain a recovery under some viable legal theory."

*Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

Therefore, "to survive a motion to dismiss, the plaintiff must allege facts that, if accepted

as true, are sufficient to raise a right to relief above the speculative level, and to state a

claim to relief that is plausible on its face."  *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d

603, 609 (6th Cir. 2009) (citations and internal quotation marks omitted).  Despite these

requirements, a court cannot grant a motion to dismiss under Rule 12(b)(6) based upon

its disbelief of a complaint's well-pled factual allegations.  *Twombly*, 550 U.S. at 555-56.

"'In determining whether to grant a Rule 12(b)(6) motion, the court primarily

considers the allegations in the complaint, although matters of public record, orders,

items appearing in the record of the case, and exhibits attached to the complaint, also

may be taken into account.'"  *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir.

2001) (emphasis removed) (quoting *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir.

1997)).

### III. DISCUSSION

Both Defendants individually present three arguments for why Plaintiff's

complaint should be dismissed or why they should be granted summary judgment.

First, Defendants argue that Plaintiff's claims are precluded by collateral estoppel.

Second, Defendants contend that Plaintiff's claims are barred by the economic loss

6

doctrine.  Finally, Defendants assert that Plaintiff's claims fail on the merits. Because
Defendants' arguments parallel one another, they will be discussed and decided as one.

### A. Collateral Estoppel

As a threshold issue, Plaintiff argues that the Court of Appeals decision reversing
this court's previous grant of Defendants' Motion to Dismiss on res judicata grounds
already disposed of the collateral estoppel issue.  (Dkt. # 61, Pg. ID 2663-64.)  The
court disagrees.  Plaintiff points to only one portion of a single sentence of dicta in the
opinion—"In other words, federal courts are not required by statute to give res judicata
or collateral-estoppel effect to an unappealed arbitration award"—to support its
conclusion; it also attempts to obscure the quoted portion's context.  (*Id.* at Pg. ID
2663, quoting *W.J. O'Neil Co. v. Shepley, Bulfinch, Richardson & Abbot, Inc.,* 765 F.3d
625, 629 (6th Cir. 2014).)  The line is plucked from a section of the opinion that merely
acknowledges that the federal Full Faith and Credit Act does not require federal courts
to give "preclusive effects" to arbitration awards.  *W.J. O'Neil Co.,* 765 F.3d at 629
(citing 28 U.S.C. § 1738).  The opinion does not even consider whether collateral
estoppel might be applicable under Michigan law.  *Id.*

Michigan courts have held that collateral estoppel, or issue preclusion, bars the
"relitigation of an issue in a subsequent, different cause of action between the same
parties or their privies when the prior proceeding culminated in a valid final judgment
and the issue was actually and necessarily determined in the prior proceeding." *Ditmore
v. Michalik,* 244 Mich. App. 569, 577 (2001). In general, collateral estoppel applies
whenever the following three elements are satisfied: "(1) a question of fact essential to
the judgment must have been actually litigated and determined by a valid and fair

judgment; (2) the same parties must have had a full [and fair] opportunity to litigate the issue; and (3) there must be mutuality of estoppel." *Monat v. State Farm Ins. Co.,* 469 Mich. 679, 683-84 (2004).  Each factor will be discussed in turn.

### 1. Actually Litigated and Determined

First, the issue of Plaintiff's damages has already been litigated and determined by the prior arbitration.  Throughout the proceeding, Plaintiff sought a total of $19,427,619.00 worth of damages against Barton Malow. This figure, however, represented the totality of Plaintiff's damages, including those damages sought in the current action caused by Defendants' alleged misconduct, as revealed in the deposition of Plaintif's own expert witness, company Superintendent Robert Gazda:

> Q. And it would be fair to say, would it not, that you generated this cost overrun report at the request of John O'Neil, Senior, correct?
>
> A. Correct
>
> Q. And when he asked you to do that, you were tasked with the responsibility of going through and trying to collect and add up *all project damages and cost overruns* that any way related to the Cardiovascular Center project, correct?
>
> A. Correct.
>
> Q. You weren't asked to figure out what damages related to something Barton Malow might have done, versus something Smith Seckmen Reid might have done, versus something the University of Michigan might have done, versus something the architect might have done?
>
> A. Correct.

(Dkt. # 59-12, Pg. ID 2563 (emphasis added).)  The arbitrators awarded Plaintiff $2,135,109.20 in contract damages, but found that Plaintiff's claims for "consequential damages, lost profits, and other indirect alleged losses," were both waived by contract and "not supported legally or factually." (Dkt. # 59-15, Pg. ID 2627.)

Although Plaintiff "concedes that its damages for Barton Malow's breach of contract were determined in the prior arbitration," it now claims that "its damages for Defendant's [sic] negligence, tortious interference, and misrepresentations have never been determined" because "[c]ontract damages are not the same as tort damages." (Dkt. # 61, Pg. ID 2665.)   The court disagrees.   Collateral estoppel bars the relitigation of *issues*, regardless of the legal claims in which they are packaged.   *See, e.g., Cole v. Westside Auto Employees Credit Union*, 229 Mich. App. 639, 647 (1998) (finding that arbitration panel's finding of facts in contract dispute precluded later civil rights suit).   At arbitration, Plaintiff sought "damages for Barton Malow's refusal to pay O'Neil for its extra labor and material costs that O'Neil incurred on the *Project as a result of defects in the Project design* and Barton Malow's mismanagement."   (Dkt. # 19-15, Pg. ID 472 (emphasis added).)

In its determination, the panel considered and awarded Plaintiff's contractual damages claim, but also considered —and *rejected*— Plaintiff's claims for consequential damages, lost profits, and other indirect alleged losses.   (Dkt. # 59-15, Pg. ID 2629.) While these damages were against Barton Malow specifically, U of M and Defendants SBRA and SSR were also parties to the arbitration, during which they "attempt[ed] to apportion between them any amount for which Barton Malow [would be] liable." (Dkt. # 19-15, Pg. ID 472.)   Plaintiff has failed to specify how the damages it now seeks differ materially from those considered and rejected by the arbitrators. In both actions, Plaintiff has sought damages to put it in as good a position as if the design errors had not been committed. (*See* Dkt. # 22, Pg. ID 1199; Dkt. # 61, Pg. ID 2665 n.4.)   The court concludes that the issue has already been litigated and determined in a past final

9

judgment.

## 2. Full and Fair Opportunity to Litigate

Second, Plaintiff and both Defendants were parties to the arbitration and had a

full and fair opportunity to litigate the issue of damages.  At the arbitration hearing,

Plaintiff's counsel was unequivocal, arguing that that case was "not about liability" at all,

but rather completely boiled down to a question of "damages" for the "breach of contract

*for failing to provide a buildable, constructable design,*" which the court has already

concluded completely encompasses those damages now sought. (Dkt. # 54-12, Pg. ID

2035-36 (emphasis added).)  Plaintiff called three different damage experts to opine on

its losses, all of whom considered Plaintiff's total damages but did not allocate blame

among the parties.  (*See, e.g.,* Dkt. ## 59-8; 59-12; 59-13.)  The court concludes that

this element has been satisfied.

## 3. Mutuality of Estoppel

Finally, Defendants concede that there is no mutuality of estoppel in this case,

but argue that Michigan law does not require such if collateral estoppel is, as here,

asserted defensively.  (Dkt. # 54, Pg. ID 1738.)  This is correct. "[M]utuality of estoppel

requires that in order for a party to estop an adversary from relitigating an issue that

party must have been a party, or in privy to a party, in the previous action." *Monat,* 469

Mich. at 683.  "The estoppel is mutual if the one taking advantage of the earlier

adjudication would have been bound by it, had it gone against him."  *Howell v. Vito's*

*Trucking & Excavating Co.,* 386 Mich. 37, 43 (1971).  Nevertheless, the Michigan

Supreme Court has carved out an exception to this general principal: "where collateral

estoppel is being asserted defensively against a party who has already had a full and

fair opportunity to litigate the issue, mutuality is not required."  *Monat,* 469 Mich. at 680-

81.  Specifically, mutuality is not required "when a defendant seeks to prevent a plaintiff from relitigating an issue the plaintiff has previously litigated unsuccessfully in an action against the same or a different party." *United States v. Mendoza,* 464 U.S. 154, 158-59 n.4 (1984).

There is no question either that Plaintiff has previously litigated the issue of damages unsuccessfully against Barton Malow or that Defendants are asserting collateral estoppel to prevent Plaintiff from getting a second bite at that apple.  The mutuality requirement is thus inapplicable.

Nevertheless, Plaintiff argues that this exception should not apply here because Michigan courts have never abandoned the mutuality requirement in a case where the prior action was an arbitration.  (Dkt. # 61, Pg. ID 2666-67.)  This is irrelevant. When sitting in diversity jurisdiction, a federal district court must apply the substantive law of the forum State.  *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78 (1938).  "In resolving issues of Michigan law, [the court] look[s] to the final decisions of the state's highest court, and if there is no decision directly on point, then [the court] must make an *Erie* guess to determine how that court, if presented with the issue, would resolve it." *Conlin v. Mortgage Elec. Registration Sys., Inc.,* 714 F.3d 355, 358-59 (6th Cir. 2013). "In making this determination, intermediate state appellate courts' decisions are also viewed as persuasive unless it is shown that the state's highest court would decide the issue differently."  *Id.* at 359.

Plaintiff concedes that in "one line of cases" the Michigan Supreme Court has held that "the mutuality requirement has been abandoned where collateral estoppel is being used defensively" (Dkt. # 61, Pg. ID 2667; *see also, e.g., Monat,* 469 Mich. at 680-81.  Plaintiff also concedes that the Michigan Court of Appeals has "indicat[ed] that

collateral estoppel general [sic] can apply when the prior action was an arbitration."
(Dkt. # 61, Pg. ID 2667; *see also, e.g.*, *Porter v. Royal Oak,* 214 Mich. App. 478, 485
(1995).)  While it is true that the Michigan Supreme Court has never applied these two
principals in the same case, the Michigan Court of Appeals has done so in at least one
instance. *See Thomas v. Miller Canfield Paddock & Stone,* No. 314374, 2014 WL
5358392 (Mich. Ct. App. Oct. 21, 2014); *see also, Volt Servs. Grp. v. Via. Info. Tools,
Inc.*, No. 02-71497, 2003 WL 24182775 (E.D. Mich. Nov. 21, 2003).  Plaintiff has failed
to provide any authority or evidence that would suggest that the Michigan Supreme
Court would be inclined to disagree. Accordingly, the court concludes the mutuality of
estoppel is not necessary.

Having determined that all necessary elements are satisfied, the court concludes
that Plaintiff's claim is barred by collateral estoppel.  The court will grant Defendants'
Motion.

## B. Merits

Even if collateral estoppel did not bar Plaintiff's current action, each Defendant
argues that it is entitled to dismissal because Plaintiff "is unable to establish the
elements of any of its purported causes of action." (Dkt. # 54, Pg. ID 1745 (capitalization
and emphasis omitted).)  The court concurs that Plaintiff has failed to state a claim upon
which relief may be granted for negligence, negligence per se, tortious interference, and
innocent/negligent misrepresentation.  Each will be discussed in turn.

## 1. Negligence

Defendants argue that Plaintiff's negligence claim fails and should be dismissed
because Plaintiff has not pleaded sufficient factual matter to establish that Defendants
owed Plaintiff a duty. The court agrees.  Under Michigan law, to "establish a prima facie

case of negligence, a plaintiff must prove the following elements: (1) the defendant

owed the plaintiff a legal duty; (2) the defendant breached the legal duty; (3) the Plaintiff

suffered damages; and (4) the defendant's breach was a proximate cause of the

plaintiff's damages." *Loweke v. Ann Arbor Ceiling & Partition Co., L.L.C.,* 489 Mich.

157, 162 (2011) (citing *Roulo v. Auto. Club of Mich.,* 386 Mich 324, 328 (1971). When

analyzing, as here, "a tort action based on a contract brought by a non-party to the

contract, 'the threshold question is whether the defendant owed a duty to the plaintiff

that is separate and distinct from the defendant's contractual obligations.'" *Matrix*

*Constr. V. Malow,* No. 265156, 2006 WL 399762, at *3 (Mich. Ct. App. Feb 21, 2006)

(quoting *Fultz v. Union-Commerce Assoc.*, 470 Mich. 460, 469-470 (2004)).

> Determining whether a duty arises separately and distinctly from the contractual
> agreement . . . generally does not necessarily involve reading the contract, noting
> the obligations required by it, and determining whether the plaintiff's injury was
> contemplated in the contract.  Instead, [the Michigan Supreme Court's] directive
> is to determine whether a defendant owes a noncontracting, third-party plaintiff a
> legal duty apart from the defendant's contractual obligations to another.

*Loweke,* 489 Mich. at 169 (internal citations omitted). "It is axiomatic that there can be

no tort liability unless defendants owed a duty to plaintiff."  *Beaty v. Hertzberg & Golden,*

*PC,* 456 Mich. 247, 262 (1997).

The Michigan Supreme Court has stated that "the question whether the

defendant owes an actionable legal duty to the plaintiff is one of law which the court

decides after assessing the competing policy considerations for and against recognizing

the asserted duty." *Friedman v. Dozorc,* 412 Mich. 1, 22 (1981).  In Michigan, "'duty' is

not sacrosanct in itself, but is only an expression of the sum total of those

considerations of policy which lead the law to say that the plaintiff is entitled to

13

protection." *Buczkowski v. McKay,* 441 Mich. 96, 100-01 (1992). "[T]he ultimate inquiry in determining whether a legal duty should be imposed is whether the social benefits of imposing a duty outweigh the social costs of imposing a duty." *In re Certified Question from the Fourteenth Dist. Ct. Of App. Of Tex., Miller v. Ford Motor Co.,* 479 Mich. 498, 505 (2007). This inquiry requires courts to consider "the relationship of the parties, the foreseeability of the harm, the burden on the defendant, and the nature of the risk presented." *Id.* (quoting *Dyer v. Tractman,* 470 Mich. 45, 49 (2004)).

Of these factors, the relationship between the parties is the most important. *Miller,* 479 Mich. at 505. "The determination of whether a legal duty exists is a question of whether the relationship between the actor and the plaintiff gives rise to any legal obligation on the actor's part to act for the benefit of the subsequently injured person." *Dyer,* 470 Mich. at 49. "Only if the law recognizes a duty to act with due care arising from the relationship of the parties does it subject the defendant to liability for negligent conduct." *Friedman*, 412 Mich. at 22.

Plaintiff argues that, as design firms, both Defendants "owe an independent professional duty of care under the common law." (Dkt. # 61, Pg. ID 2676.) In its Complaint, Plaintiff originally claimed that this duty arose because both Defendants had a "special relationship" with Plaintiff "as a result of the critical importance of the design of the mechanical systems for a hospital, the sacrifice of the floor-to-floor and above-ceiling space without regard for the consequences to O'Neil and future patients, and the mandated design assist process to correct [Defendants'] own errors." (Dkt. # 1, Pg ID 7, 9.) Under Michigan law, the heightened duties of a special relationship accrue only when "one person entrusts himself to the control and protection of another, with a

14

consequent loss of control to protect himself." *Bailey v. Schaaf,* 494 Mich. 595, 604

(2013) (quoting *Williams v. Cunningham Drug Stores, Inc.,* 429 Mich. 495, 499 (1988).

The Michigan Supreme Court has recognized only a limited number of these special

relationships: common carrier-passenger; innkeeper-guest; landlord-tenant; employer-

employee, doctor-patient; and mental health professional-patient.  *Dawe v. Dr. Reuven*

*bar-Levav & Assoc., P.C.,* 485 Mich. 20, 26 n.3 (2010).  The Court has never held that

the design professional-contractor relationship is one that triggers heightened duties,

nor has it indicated that doing so would be appropriate.  Plaintiff has not pleaded, let

alone provided evidence to suggest, that it "entrust[ed] [it]self to the control and

protection of [Defendants]" or that it lost "control to protect [it]self."  Accordingly, Plaintiff

has failed to plead sufficient facts to establish a "special relationship" existed between

Plaintiff and either Defendant.

      Plaintiff also argues that, irrespective of any special relationship, Defendants

owed it a duty "to exercise that degree of care consistent with the greater degree of

knowledge and skill possessed by design professionals."  (Dkt. # 1, Pg. ID 7.)  To

support this proposition, Plaintiff points to a Michigan Court of Appeals decision, *Bacco*

*Const. Co. v. Am. Colloid Co.,* 148 Mich. App. 397 (1986).  In *Bacco*, a contractor

entered into a contract to construct a series of waste-water lagoons for Houghton

County. The project engineer employed by the government "provided various

specifications for the project including that the lagoons were to be constructed with a

seal" made of "Volcay betonite product manufactured by the [project engineer.]" *Id.* at

402.  After installation, these seals "failed to meet the standards contained in the

specifications" and developed a "substantial leak."  *Id.* at 402-03.  The contractor

15

undertook corrective measures, and sued the project engineer for the financial losses it incurred. *Id.*

The Michigan Court of Appeals adopted the reasoning of the Arizona Supreme Court and held that "design professionals are liable for foreseeable injuries to foreseeable victims which proximately result from negligent performance of their professional duties." *Id.* at 414 (citing *Donnelly Const. Co. v. Oberg/Hunt/Gilleland,* 139 Ariz. 184 (1984)). These victims included third-party contractors because it "is certainly foreseeable that [a design professional's] failure to make proper calculations and specifications for a construction job may create a risk of harm to the third-party contractor who is responsible for applying those specifications to the job itself." *Id.* at 416.

But, as Defendant SBRA points out, *Bacco* was "decided before the Michigan Supreme Court [explained] that a third party may not recover in tort solely under a theory of negligent performance of contractual obligations owed to another." (Dkt. # 64, Pg. ID 2844.)  Subsequent decisions by the Michigan Court of Appeals have concluded that *Bacco* was "overruled,"  *Keller Const. Inc. v. U.P. Engineers & Architects, Inc.,* No. 275379, 2008 WL 2665113, at *4 (Mich. App. July 8, 2008), and have interpreted the Michigan Supreme Court's "distinct and separate" analysis in a way that precludes Plaintiff's cause of action.

For example, in *Tucker v. Pipitone,* an adult foster group home hired a contractor to remodel its building.  No. 294754, 2011 WL 519973, at * 1 (Mich. Ct. App. 2011). The contractor then hired a subcontractor to install vinyl siding on the project.  *Id.* During installation, the subcontractor placed a large cardboard box full of siding on the

16

group home's driveway. *Id.* One of the home's residents who was blind walked into the box and fell, injuring himself. *Id.* When sued, the subcontractor moved for summary disposition, arguing that "he did not owe a duty to [the plaintiff] that was separate and distinct from his contract with [the contractor]." *Id.* at *2. The Court of Appeals disagreed, distinguishing "between harms caused by the failure to perform the duty imposed under the contract and the failure to refrain from taking actions that unreasonably place others in danger." *Id.* at *6. Summary disposition was inappropriate because plaintiff had alleged that the subcontractor's "actions *directly* caused him to fall and suffer injury," a breach of the "common law duty to act in a manner that does not place others in unreasonable danger." *Id.* (citing *Ghaffari v. Turner Const. Co. (On Remand),* 268 Mich. App. 460, 466 n.5 (2005). By contrast, the court noted that had the plaintiff "alleged that [the subcontractor] negligently installed the siding, which then fell and injured him, his claim would clearly arise solely from the duty imposed under the contract." *Id.* at *6 n.3. The Michigan Supreme Court denied the subcontractor's application to appeal, but when doing so, noted that "[t]he Court of Appeals did not err" in its analysis.

This case corresponds precisely with the counterfactual raised by the Court of Appeals. As with a subcontractor who negligently installs material that later falls and injures a third-party, at most Defendants negligently fulfilled their contract with UofM by producing inaccurate architectural specifications. Contrary to Plaintiff's bare-bone allegations in its Complaint, no new hazard was created. Thus, instead of being "separate and distinct," here Plaintiff's claim "arise[s] solely from the duty imposed by the contract."

17

In the absence of an identifiable duty, Plaintiff has failed to state a claim upon which relief may be granted. The court will grant this aspect of Defendants' Motions.

### 2. Negligence Per Se

In its Response, Plaintiff argues for the first time that "Defendants' [sic] are also liable under a negligence *per se* theory." (Dkt. # 61, Pg. ID 2681 (bold omitted).) Specifically, Plaintiff points to the Michigan Occupational Code, asserting that Defendants failed to conform to the requirements of M.C.L. § 339.604. This subsection prohibits individuals from violating "a rule of conduct of an occupation," M.C.L. § 339.604(c); commiting "an act which demonstrates incompetence," M.C.L. § 339.604(g); and violating "any other provision of this act or a rule promulgated under this act for which a penalty is not otherwise prescribed," M.C.L. § 339.604(h).

The Michigan Court of Appeals has held that the Michigan Occupational Code's public enforcement mechanism precludes private parties from asserting a negligence per se claim for violations of the statute. *Plymouth Pointe Condo. Ass'n v. Delcor Homes-Plymouth Pointe, Ltd.,* No. 233847, 2003 WL 22439654, at *9 (Mich. Ct. App. Oct. 28, 2003) (citing M.C.L. § 339.508). Even assuming that Plaintiff could engraft the act's duty and standard of care into its negligence claim, Plaintiff has done nothing but parrot the statutory provisions which Defendants supposedly violated. These bare bone recitations are insufficient to satisfy the *Twombly* pleading requirement. *Twombly*, 550 U.S. at 577. Plaintiff has failed to state a claim, and the court will grant this aspect of Defendants' Motions.

### 3. Tortious Interference

18

Plaintiff's tortious interference claim also fails. "The elements of a tortious interference with a contract are (1) a contract, (2) a breach, and (3) an instigation of the breach without justification by the defendant." *Knight Enters. v. RPF Oil Co.,* 299 Mich. App. 275, 280 (2013). The crux of Defendants' argument is that Plaintiff has failed to plead sufficient factual matter to establish that any breach of contract was done without justification by the defendant. (*See* Dkt. # 54, Pg. ID 1751-53.)

With respect to the third element, one "who alleges tortious interference with a contractual . . . relationship must allege the intentional doing of a per se wrongful act or the doing of a lawful act with malice and unjustified in law for the purpose of invading the contractual rights . . . of another." *Derderian v. Genesys Health Care Sys.,* 263 Mich. App. 364, 382 (2004). "An act is wrongful per se only if it is inherently wrongful or is never justified under any circumstances." *Henslee, Monek & Henslee v. D.M. Cent. Transp. Inc.,* 870 F. Supp. 764, 766 (E.D. Mich. 1994) (citing *Formall Inc. v. Cmty. Nat'l Bank of Pontiac,* 166 Mich. App. 772, 780 (1988). Similarly, to "establish that a lawful act was done with malice and without justification, the plaintiff must demonstrate, with specificity, affirmative acts by the defendant that corroborate the improper motive of the interference." *BPS Clinical Labs v. Blue Cross and blue Shield of Mich.,* 217 Mich App. 687 (1996). A defendant cannot be held liable for tortious interference "where he is motivated by legitimate personal or business interests." *Wood v. Herndon,* 186 Mich. App. 495, 500 (1990).

Here, Plaintiff has failed to allege that any of Defendants' acts were per se wrongful or malicious. In its Complaint, Plaintiff alleges only that Defendants

intentionally interfered with O'Neil's contract with Barton Malow by reducing the

19

available floor-to-floor and above-ceiling heights without regarding for the systems to be installed by O'Neil or the safety of future patients, failing to ensure that the Project as designed was constructible, and by failing to timely and by [sic] adequately participate in the design assist process, as well as other intentionally [sic] interferences.

Even when viewed in the light most favorable to Plaintiff, these allegations are insufficient to support a conclusion that Defendants' actions were wrongful per se or improperly motivated by malice. Accordingly, the court will grant this aspect of Defendants' Motions.

### 4. Innocent/Negligent Misrepresentation

Defendants argue that Plaintiff's innocent misrepresentation claim should also be dismissed because "[p]rivity of contract is an absolute prerequisite" and the misrepresentation "must have been made while the parties were in the process of creating a contract," which Plaintiff cannot prove. (Dkt. # 54, Pg. ID 1754.) Plaintiff even acknowledges as much, claiming "that Count III is incorrectly styled 'innocent misrepresentation,' and that it should have been styled 'negligent misrepresentation." (Dkt. # 61, Pg. ID 2688-89.)

But even this newly-minted "negligent misrepresentation" claim fails. "To establish a claim of negligent misrepresentation, plaintiffs [are] required to prove that they 'justifiably relied to [their] detriment on information prepared without reasonable care *by one who owed the relying part[ies] a duty of care.*'" *New Dimension Develop., Inc. v. Orchard, Hiltz & McCliment, Inc.*, No. 262565, 2005 WL 2806234 (Mich. Ct. App. Oct. 27, 2005) (quoting *Mable Cleary Trust v. Edward-Marlah Muzyl Tr.,* 262 Mich. App. 485, 502 (2004) (emphasis added; alterations in the original)). As mentioned above, because Defendants' duties arose exclusively from their contracts with UofM,

20

Defendants did not owe a duty of care to Plaintiff.  Plaintiff has failed to state a claim upon which relief may be granted.

### C. Economic Loss Doctrine

Defendants also argue that the court should grant its motion to dismiss because "[p]ursuant to the economic loss doctrine, Michigan does not permit recovery of purely economic loss under a tort theory for a claim that sounds in contract." (Dkt. # 54, Pg. ID 1742.)  This is a novel question of state law unresolved by the Michigan Supreme Court. Having already concluded that Plaintiff's claims are barred by collateral estoppel and that Defendants are entitled to summary dismissal on the merits, the court declines the invitation to wade into this complicated area of state law.  Either of the other two grounds would alone warrant dismissal.

### III. CONCLUSION

IT IS ORDERED that Defendant SBRA's motion to dismiss (Dkt. # 54) is GRANTED.

IT IS FURTHER ORDERED that Defendant's SRS motion to dismiss (#59) is GRANTED.

> s/Robert H. Cleland
> ROBERT H. CLELAND
> UNITED STATES DISTRICT JUDGE

Dated:  August 5, 2016

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, August 5, 2016, by electronic and/or ordinary mail.

> s/Lisa Wagner
> Case Manager and Deputy Clerk
> (313) 234-5522

S:\Cleland\JUDGE'S DESK\C1 ORDERS\11-12020.O'NEIL.dismiss.jah.RHC.wpd